1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MICHAEL RICHARDSON,

11          Petitioner,                    No. 2:06-cv-01731 ALA (HC)

12     vs.

13   CLAUD FINN,                    ORDER

14          Respondent.

15   _____/

16          Pending before the Court is Petitioner Michael Richardson's ("Petitioner") application

17   for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) (No. 18), Claud Finn's

18   ("Respondent") answer (No. 21), and Petitioner's opposition to the answer (No. 24).  For the

19   reasons discussed below, Petitioner's application is denied.

20                                    **I**

21                                    **A**

22          On May 12, 2006, a jury in the Placer County Superior Court found Petitioner guilty of

23   the following five offenses: Count One, exhibiting or sending harmful matter to a minor (Cal.

24   Penal Code § 288.2(b)); Count Two, attempting to commit a lewd act with a child under fourteen

25

26

1    years of age (Cal. Penal Code §§ 664[1]/288(a)); Count Four, annoying or molesting a minor (Cal.

2    Penal Code § 647.6 (a)); and Count Five possession of methamphetamine (Cal. Health & Safety

3    Code § 11377(a)).[2]  Clerk's Transcript of Record, *People v. Richardson* ("Lodged Item No. 1")

4    at 488-88, 928-31.  On June 9, 2006, the trial court sentenced Petitioner to state prison for a

5    term of five years and four months, calculated as follows: four years for Count Two (upper

6    term), plus a consecutive term of eight months for Count One (one-third the middle term), plus a

7    consecutive term of eight months for Count Five (one-third the middle term).  The court imposed

8    a concurrent term for Count Four.  Lodged Item No. 1 at 969-72; Reporter's Transcript of

9    Record, *People v. Richardson* ("Lodged Item No. 2") at 612-14.

10                                              **B**

11          On June 9, 2006, Petitioner filed a direct appeal from the trial court's judgment and

12   sentence to the California Court of Appeal for the Third Appellate District.  The California Court

13   of Appeal summarized the facts as follows:

          Counts 1 through 4 sprang from online conversations between defendant and the
14        victims, "Jane Doe" (counts 2 and 4) and "Mary Roe" (counts 1 and 3), on the
          night of April 8, 2004.  Defendant had made Mary Roe's online acquaintance
15        earlier, but the police did not learn that until after they had arrested defendant for
          his conduct toward Jane Doe.
16

17        *Jane Doe*

18        On April 8, 2004, 13-year-old Jane Doe and her family were visiting her
          grandparents in Las Vegas.  Around 10:00 p.m., Jane was sitting with her cousin
19        in her grandparents' house, exchanging instant text messages (IM) with a friend
          through the Yahoo Internet service.  Jane's Yahoo profile showed that her screen
20        name, "invader_tabbz," belonged to a 13-year-old girl living in Roseville.

21        A pop-up message appeared on Jane's screen from "supersmartguy2004," who
          claimed to be Mike from Roseville, aged 29.  Mike asked if Jane wanted to "meet
22        up" that night.

23   _____

24        [1]California Penal Code § 664 provides a punishment for the attempt of a statute when no
     provision is made by law for the punishment of those attempts.  In this case the petitioner was
25   charged with attempt of California Penal Code § 288(a).

26        [2]The jury deadlocked on Count 3, annoying or molesting a minor (Cal. Penal Code §
     647.6 (a)), and the trial court declared a mistrial on that count.

                                              2

This message made Jane uncomfortable.  She knew she was not supposed to exchange IMs with strangers and felt her privacy had been invaded. Calling the message "weird," she showed it to her cousin, then turned over the conversation to her.

Jane's cousin, posing as Jane, asked Mike how he got her screen name; Mike answered that he got it from the "member directory."  Soon afterward the cousin asked Jane's stepfather, S.G., to intervene.

"[F]lustered" and scared, Jane told S.G. that "some guy" who knew where she lived had tried to contact her.  S.G. sat down at the computer and told her to leave the room.  He then carried on the conversation as Jane, meanwhile telephoning the Roseville Police Department and getting advice on "what kind of information to solicit."  After finishing the conversation with "supersmartguy2004," S.G. faxed or e-mailed a hard copy to the police.

According to the hard copy, "supersmartguy2004" tried to set up a liaison with "invader_tabbz," whom he believed to be a 13-year-old girl named Kathy.  He asked her, "have you ever made out before?" When "she" said she had, he replied, "so lets makeout[.]"  He instructed her to sneak out and meet him at a nearby 7-Eleven so they could go back to his place for that purpose.  He said he would be driving a "lil black 2 door" with "chrome rims" and gave her a cell phone number.  He also said he would be wearing a black T-shirt and jeans; at his request, "Kathy" promised to wear a skirt.

Roseville Police Sergeant Bergstrom advised the police dispatcher about what to tell S.G.  Bergstrom suggested the 7-Eleven which S.G. (as Kathy) and defendant picked as the place to meet at 12:30 a.m. on April 9, 2004.  After getting a description of the suspect, his clothing, and his car, Bergstrom deployed officers to watch the 7-Eleven and to arrest the suspect if he showed up.

Roseville Police Officer Wernli, parked near the 7-Eleven in an unmarked car, saw a black car park in the lot around 12:20 a.m.  Defendant, wearing a black T-shirt and jeans, went into and out of the store, got back in his car, and drove off.

Roseville Police Officer Buelow, on assignment with Officer Wernli, got out of their car for a better view from what he believed to be a shadowed spot.  He saw defendant walking around in the store and making a purchase, then heard defendant's car "rapidly accelerating" as it left.  Buelow later realized the spot he had stood in was well-lit and defendant might have observed him.

At 12:22 a.m., Sergeant Bergstrom learned that the suspect's car was leaving the 7-Eleven.  He got behind the speeding car, then stopped and arrested defendant, its sole occupant.

Sergeant Bergstrom determined the car was registered to defendant at an address on Sunrise Boulevard in Roseville, just a few miles away.  Searching the car, on the back seat the officers found a paper bag containing a bottle of Mike's Hard Lemonade and a box of Trojan condoms.  Officer Wernli confirmed that the 7-Eleven stocked those items.  The 7-Eleven's surveillance videotape showed

defendant entering the store at 12:16 a.m. on April 9, 2004, and standing at the counter at 12:18 a.m.

Later on April 9, 2004, Roseville Police Detective Walstad searched defendant's residence and seized a computer, which he turned over to the High Tech Crimes Task Force for forensic analysis.  Sacramento County Sheriff's Detective Dale Lee, a member of the task force, examined the computer's hard drive.

Lee determined the computer was used by Yahoo subscriber "Mike," whose screen names included "supersmartguy2004" and "mikeys20032003."  Four photographs of a white male adult, printed from the computer, were identified as depicting defendant.

A Yahoo subscriber can identify and view subscribers' profiles by gender, age, and location, although he cannot be sure the information is accurate because the subscriber provides it and Yahoo does not verify it.  "Mike" had viewed profiles of users purporting to be females under 18, including "invader_tabbz."

A search on the computer for "invader_tabbz" revealed an IM conversation between a person using that name and defendant, beginning around 10:49 p.m. on April 8, 2004.  The conversation was identical to the one S.G. sent the Roseville police.

*Mary Roe*

People's Exhibits 37 and 38 showed an IM dialogue between defendant and "ascension_into_lies," profiled as a 13-year-old girl living in Sacramento (Mary Roe), on March 7, 2004, and March 19, 2004.  On March 7, he introduced himself and asked if she wanted to "fuck tonight seriously," but got no response.  On March 19, he asked if she wanted to meet "right now tonight no bullshit"; she answered, "not really," since she did not know him and he was "probably too old." She also said she did not feel like "sneaking out" and she had a boyfriend.

People's Exhibit 33 showed Mary Roe's Yahoo profile, including her photograph, which defendant had viewed.  People's Exhibits 35 and 36 showed this and other photographs of Mary Roe, found on defendant's hard drive along with a photograph of a white adult male.

People's Exhibit 32 showed 58 pages of further IM conversation between defendant and Mary Roe on April 8, 2004, beginning around 3:32 p.m. and ending shortly before he contacted Jane Doe.

Mary Roe testified about this evidence.  In March and April 2004, she was a 13-year-old Yahoo subscriber using the screen name "ascension_into_lies."  She remembered at least three IM conversations with "supersmartguy2004" or "mikeys20032003."  She ignored his first message, thinking "it was just some random person that was trying to harass" her; she felt the same way about the second message.  However, on April 8, she engaged in a prolonged and sexually suggestive discussion with defendant.

During this conversation, defendant said he would like Mary "passed out naked"

on his "bedroom floor"; though she felt "harassed," she did not end the discussion.  She told him she was "not even old enough to get a work permit"; he answered, "oh shit ok."  She sent him photographs of herself; he said, "hey you look good."  She told him she was wearing a skirt, underwear, a bra, and a tank top; he responded, "oh yeah" and "im liking that skirt thing."  She said, "Having sex in a skirt."  He gave her his cell phone number and told her to call him.

Later, defendant said he wanted to take her "panties off play with you lil pussy while you give me those big lips on my you know then I fuck that wet little pussy k," then added, "hows that sound"; she replied, "Very good."  He reiterated that he wanted "to just hike that skirt and get busy."  He also asked if they could "just park somewhere and do it in my car huh?"

During a one-hour break in the IM conversation, defendant called Mary on the phone and tried to engage in "phone sex" with her.  She did not reciprocate.

At another point, defendant and Mary further discussed sex acts.  He asked her if she liked "it from behind or from the front or does it matter" and said, "bet you get wet really easy huh"; she replied, "Yeah."  He added, "just think we couldve been doing it right now[.]"  He explained he liked "the top thing" and "to see a grl play with herself for me a lil first and spreads herself open for me to do you know wat i mean"; she said she did.  He followed up: "omg I'm getting hornier i really want to hike up your skirt take your panties off and go inside you right now though would you like that?"; she answered "mmhmm."  He asked if she was "getting wet at all right now."  He asked if she liked "it slow or hard and fast" and added, "lil of both huh"; she answered "yep."  He said he wanted "to suck those sweet tits of yours chew on your lips to mmm."

Defendant then tried to talk Mary into sneaking out and meeting him.  She answered, "maybe," adding, "night er escapades are a lot harder to pull off than day ones."  He offered to pick her up near home, saying she would not "be gone all that long you know."  Apparently sensing reluctance, he accused her of playing "some kind a game or something"; she replied it was "not a game," her parents were home, she was "under high alert and all," and did not want to "face the consequences."  He asked when they went to bed; she said "no set bedtimes."

*Uncharged acts*

Sacramento County Sheriff's Detective Dale Lee also testified about other IM conversations on the computer between defendant and apparently underage females.  Hard copies were introduced as exhibits.

People's Exhibit 20 showed an IM conversation between defendant and "mllefloride," profiled as a 16-year-old girl, around 7:00 p.m. on March 6, 2004.  Defendant asked if she wanted to "fuck tonight maybe."  She responded, "illegal"; he replied, "so."  She asked if he wanted to be arrested; he said, "sure im not scared."  She said she was "only 14, and my dads a cop"; he said he "always wanted to do a cops lil girl."  He asked her to sneak out and meet him because he wanted "some hot young sweet pussy I could eat for awhile."  He explained he preferred to "pick up" girls on the Internet because they are "way sweet compared to bars."

People's Exhibit 16 showed IMs defendant sent to "blink_chicka_182," profiled as a 15-year-old girl.  Ultimately identifying himself as a 29-year-old in Roseville, he contacted her on four different dates from March 12, 2004, to April 5, 2004, repeatedly asking to get together and "make out" or "fuck maybe."  He asked if she was a virgin and said he "really want[ed]" her.  She never responded.

People's Exhibit 20 showed IMs defendant sent to "bammawuvsyou," profiled as a 16-year-old girl living in Roseville, on three dates beginning January 2, 2004, and ending February 12, 2004.  The first time he asked her to let him give her a "full body massage with warm passion fruit lotion all over"; the second time he asked if she could come over that night; the third time he said he sought a "cute girl" who wanted to "fuck no strings no bullshit games im serious reply if your interested in hearing more[.]"  She never responded.

People's Exhibit 17 showed an IM defendant sent to "babkitz," profiled as a 16-year-old girl living in Sacramento, on February 12, 2004, confiding that he "really want[ed] to get laid tonight."  She did not respond.

People's Exhibit 21 showed an IM dialogue between defendant and "ilikeitinthebutt05," profiled as a 16-year-old girl living in Rocklin, over the period January 13, 2004, to February 8, 2004. On January 13, defendant wrote that she had a "nice sn"; she replied, "haha."  On January 14, defendant told her he "really want[ed]" her, invited her to "come over," and let her know he wanted "to do you somewhere not just the but"; she did not respond then, or on January 23 or February 1.  His February 4 promise to "give it to you inthebut if you want" did not improve his luck; nor did his February 6 invitation to come see him at his house.  On February 8, he asked her to meet him sometime soon; she replied that she did not know him and asked his age; he invited her to look at his profile.  She said she was 15; he said he was 29.

People's Exhibit 19 showed IMs defendant sent to "flutterbyes01," profiled as a 16-year-old girl living in Roseville, over the period February 22, 2004, to April 9, 2004.  On February 22, introducing himself as a 29-year-old living in Roseville, he asked if she wanted to meet that night; on February 24, he asked if they could "meet and just fuck"; on February 26, he hoped to be her "teddy bear forever"; on February 29, he asked her to marry him; on March 7, he asked her to meet him that night to "fuck"; on April 9, he again asked her to meet that night.  She never responded.

*Other evidence*

While searching defendant's home, in a desk drawer Detective Walstad found a plastic bag containing a substance which proved to be a usable amount of methamphetamine, along with a "methamphetamine pipe" and defendant's expired driver's license.

Defendant did not testify or put on evidence.

*People v. Richardson*, 151 Cal. App. 4th 790, 792-798 (Ct. App. 2007).

The California Court of Appeal affirmed, in part, and reversed in part with regard to the upper-term sentence.  The California Court of Appeal found the upper-term sentence "unconstitutional in light of" *Cunningham v. California*, 549 U.S. 270 (2007), and remanded the matter to the trial court for resentencing.  *Id.* at 460.  On December 5, 2007, the Placer County Superior Court resentenced Petitioner to five years and four months of imprisonment.  Clerk's Abstract of Judgment after Resentencing, Lodged Item No. 10.

Petitioner petitioned the California Supreme Court for review on the same claims he brought before the California Court of Appeal on June 2, 2007.  The California Supreme Court denied the petition on September 12, 2007.

Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for the Third Appellate District on or about December 19, 2006.  The California Court of Appeal denied the petition for writ of habeas corpus on December 28, 2006.  The court stated that Petitioner's remedy by appeal was adequate, relying on *In re Harris,* 21 Cal. Rptr. 2d 373, 378-380 (Cal. 1993).  Petitioner filed separate petitions for a writ of habeas corpus in the California Supreme Court on October 20, 2006 and January 26, 2007.  These were denied on April 18, 2007.  In so doing, the California Supreme Court relied on *In re Dixon*, 41 Cal. 2d 756 (Cal. 1953); *In re Lindley*, 29 Cal. 2d 709 (Cal. 1947); *In re Lessard,* 62 Cal. 2d 497, 503 (Cal. 1965); and *People v. Duvall*, 9 Cal. 4th 464, 474 (Cal. 1995).

Petitioner exhausted his federal constitutional claims in state court except for claim nineteen which alleges that the California Department of Corrections is subjecting Petitioner to cruel and unusual punishment.

## II

Petitioner's application sets forth nineteen claims for relief.  Section 2254(d) provides that:

>     (d)     An application for a writ of habeas corpus on behalf of a person in custody
>             pursuant to the judgment of a State court shall not be granted with respect
>             to any claim that was adjudicated on the merits in State court proceedings

unless the adjudication of the claim—

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Under § 2254(d)(1), "[a] state court decision is 'contrary to' our clearly established precedents if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases,' or if it 'confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Early v. Packer*, 537 U.S. 3, 8 (2002) (citing and quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of § 2254(d)(1), a federal court may grant habeas corpus relief if the state court identified the correct governing legal principle from the Supreme Court's decisions, but unreasonably applied that principle to the facts of the prisoner's case. *Williams*, 529 U.S. at 413.  A federal habeas court, however, "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its 'independent review of the legal question,' is left with a 'firm conviction' that the state court was 'erroneous'").

**III**

**A**

Petitioner first contends that there was "[i]nsufficient evidence for a conviction under [California Penal Code] section 288.2(b)."  App. at 5.  Specifically, he argues that "[t]here was no evidence presented as to what statewide community standards are.  The jury did not employ a statewide standard in determining whether the material exhibited was harmful." *Id.*

1      A thorough discussion of the standards governing a federal habeas-court review of the

2   sufficiency of evidence is not warranted to dispose of this contention because the Ninth Circuit

3   has held that "evidence regarding contemporary community standards is admissible, [but] it is

4   not necessary." *United States v. Merrill*, 746 F.2d 458, 464 (9th Cir. 1984) (relying on *Hamling*

5   *v. United States*, 418 U.S. 87, 104-05 (1974) and discussing the application of *Miller v.*

6   *California*, 413 U.S. 15, 30 (1973)).  As the Supreme Court explained in *Hamling*:

7             the prosecution need not as a matter of constitutional law produce
              "expert" witnesses to testify as to the obscenity of the materials
8             . . . . A juror is entitled to draw on his own knowledge of the
              views of the average person in the community or vicinage from
9             which he comes for making the required determination, just as he
              is entitled to draw on his knowledge of the propensities of a
10            'reasonable' person in other areas of the law.

11   418 U.S. at 104-05.  The prosecution need not introduce evidence of community standards

12   because the jury "is assumed to be inherently familiar with and capable of applying those

13   views." *Merrill*, 746 F.2d at 464.  Thus, the state court's rejection of Petitioner's first claim was

14   not contrary to, nor an unreasonable application of, clearly established federal law.

15                                              **B**

16      Petitioner's second contention relates to a hearing on April 28, 2006, at which the trial

17   court refused to discharge his appointed counsel.  The Petitioner argues that he first asked to

18   represent himself and following the denial of this request, his request for substitute counsel was

19   also denied.  App. at 5, 43-46.  Petitioner claims that these denials violated his Sixth and

20   Fourteenth Amendment right to counsel.

21      On April 28, 2006, Petitioner made an oral and written motion to discharge counsel as

22   follows:

23             THE COURT:          Sir, you want to come forward.

24             THE DEFENDANT:  Yes.

25             (Whereupon, the Defendant was sworn by the Clerk.)

26             THE DEFENDANT:  Yes.

| | | |
|---|---|---|
| 1 | THE COURT: | All right. |
| 2 | | Sir, you want to tell me the reasons that you |
| 3 | | believe that you're having -- are there chairs there?  If you'd be more comfortable -- |
| 4 | THE DEFENDANT: | Oh, no.  I'm fine. |
| 5 | THE COURT: | Sir, can you tell me what the reasons are |
| 6 | | why you believe that you are not being well-served by Defense Counsel? |
| 7 | THE DEFENDANT: | Yeah.  There is multiple statutorial and |
| 8 | | Constitutional violations involved in this case, okay, that hasn't been addressed |
| 9 | | properly, I don't believe. |
| 9 | THE COURT: | Okay.  Can you be more specific for me? |
| 10 | THE DEFENDANT: | Yes.  It's a violation of Penal Code 181.1, |
| 11 | | 118.8, and Penal Code of 129 that were made by officers in this case.  There's the - |
| 12 | | - |
| 13 | THE COURT: | You believe officers violated these statutes, |
| 14 | | is that what you're suggesting? |
| 14 | THE DEFENDANT: | Yes, I do. |

Actually, I have a motion here to vacate and a motion for -- to dismiss on the evidence is insufficient, and as a matter of law, okay; I have case law.  I have case law involved in this motion that states -- and is evidence that it's -- that the evidence is insufficient, okay?  I filed several motions, tried to actually press Counsel to address these issues, which has been unsuccessful. I've been denied my Marsden motions.[3] And the conflict attorney misled me into believing that that was an attorney instead of just a conflict attorney, okay?  That's the reason that I withdrew my Faretta motion

---

[3] A *Marsden* motion under California case law is brought to seek a substitution of appointed counsel.  *People v. Marsden,* 84 Cal. Rptr. 156 (Cal. 1970).  In bringing such a motion, a "defendant must make a sufficient showing that denial of substitution would substantially impair his constitutional right to the assistance of counsel, whether because of his attorney's incompetence or lack of diligence, or because of an irreconcilable conflict."  *People v. Ortiz,* 275 Cal. Rptr. 191, 194 n.1 (Cal. 1990) (citations omitted).

1    in the beginning.

2    I would just ask the Court to either vacate
3    the current trial date or to continue it on
     this motion to dismiss on the insufficient
4    evidence.  There's multiple objections in
     this document that I would like presented
5    for my appeal, if it goes that far.  And I also
     filed a declaratory relief in the Superior
6    Court, which has been continued on the
     Court's own motion until the 9th.

7    THE COURT:            The motion that you filed for declaratory
                           relief, is that a civil case that you filed?
8
     THE DEFENDANT:  Yes, but it's also to – it includes enjoining
9                    the prosecution with a cross --

10   THE COURT:            When was that to be heard, sir?

11   THE DEFENDANT:  Pardon me?

12   THE COURT:            When is that matter to be heard?

13   THE DEFENDANT:  A tentative ruling was on it and it was
                     continued on the Court's own motion to
14                   May 9th.

15   THE COURT:            And what was the tentative ruling?

16   THE DEFENDANT:  To be continued on the Court's own
                     motion.
17
     THE COURT:            So there was no tentative ruling?
18
     THE DEFENDANT:  That was the tentative ruling that I was
19                   aware of.
                     Pardon me?
20
     MS. O'CONNOR:       A ruling would be like to grant the motion
21                       or continue.

22   THE DEFENDANT:  it was continued on the Court's own
     motion.
23
     THE COURT:            It didn't say motion granted, motion
24                         denied?

25   THE DEFENDANT:  No, sir.

26   THE COURT:            Sometimes on those matters they'll give

|   |   |   |
|---|---|---|
| 1 | | you a tentative decision and then the matter |
| 2 | | can be continued if someone wishes to appear and argue. |
| 3 | THE CLERK: | It's possible that they just continued it.  It is |
| 4 | | possible. |
| 5 | THE COURT: | It's possible it was just continued and that's to be heard on May 9th; is that correct? |
| 6 | THE DEFENDANT: | Correct; yes.  So there was no |
| 7 | | determination on that. |
| 8 | THE COURT: | All right. |
| 9 | | So I need more specificity with regard to what your difficulties are with 118.1 and |
| 10 | | 118.8. |
| 11 | THE DEFENDANT: | Okay.  They're actually police -- false statements in their police reports that were |
| 12 | | not attributed to any other individual.  They were stated as fact from the police officers -- |
| 13 | THE COURT: | Okay. |
| 14 | THE DEFENDANT: | -- which is a violation of Penal Code 118.1. |
| 15 | THE COURT: | Perjury is what you're suggesting? |
| 16 | THE DEFENDANT: | Perjury and the false -- the false statements, |
| 17 | | actually.  I don't believe false statements in a police report -- there's another Penal |
| 18 | | Code that does not make it perjury, but it makes it unlawful for it. |
| 19 | THE COURT: | And your relationship to this case, how do |
| 20 | | you relate that to your belief that you're not being adequately represented? |
| 21 | THE DEFENDANT: | Because these issues were not brought up |
| 22 | | in my preliminary hearing and it raised issues on inadmissability of evidence.  It |
| 23 | | was illegally seized from my residence.  In a preliminary hearing that was actually -- I |
| 24 | | was convinced through fraud and through deceit to waive my original preliminary |
| 25 | | hearing, okay, on the original complaint. |
| 26 | THE COURT: | There has been a preliminary hearing at this |

12

1                                    point in time; correct?

2       THE DEFENDANT:   Correct, but that was on the amended complaint on the evidence obtained after the unlawful seizure of my property and the unlawful search of my residence, okay, based on an affidavit full of false statements and false material facts, which are documented in this document that -- the officers' actual false statements and false allegations cited in that affidavit.  There were multiple issues in there that should have not -- not been presented in an affidavit, okay, which would -- that would amount to perjury, definitely.  There's multiple statutorial Constitutional issues involved.

10       THE COURT:           And multiple and statutory and Constitutional issues arising in this area here where you're talking about your concern about police making false statements and so forth?

13       THE DEFENDANT:   I'm concerned about there was no arresting charge to begin with and there was no probable cause or no sufficient evidence to make an arrest to begin with, okay.  And that issue was never addressed because I was convinced to waive my right to a preliminary hearing on the original complaint.  So therefore the second -- the amended complaint, evidence that was seized from my house and evidence that was brought forth onto the record was evidence that was illegally obtained through that because of the false allegations and false statements in the affidavit and in the police reports.  They procured an arrest without probable cause, Penal Code 170.

21       THE COURT:           Okay.  Now, has your attorney been made aware that you filed this motion for declaratory relief?

Counsel, were you aware of that?

24       MS. O'CONNOR:     I received a copy of it from, I think, the District Attorney.  I received a number of documents that Mr. Richardson has filed.  That's just one of many.  I usually receive

|   |   |   |
|---|---|---|
| 1 |  | it through discovery from the District Attorney. |
| 2 | THE COURT: | All right. |
| 3 |  |  |
| 4 |  | And Counsel do you have a new and different motion that you wanted to file in this motion? |
| 5 |  |  |
| 6 | MS. O'CONNOR: | Me? |
| 7 | THE COURT: | I'm sorry. |
|  |  | Sir, you have a different motion? |
| 8 | THE DEFENDANT: | Yes, I do.  I would like to file it; it's been served on the District Attorney.  I wasn't sure if it would be premature if I served it before a trial date was set, so I went ahead and I waited until today to confirm exactly the process of doing that.  But I went ahead and I served it on the District Attorney through electronic e-mail two days ago. It's under the Penal Code Section 1050(b), for a continuance of the hearing based on the statutorial issues and the Constitutional issues, and it was a motion to vacate and motion to dismiss all the evidence as insufficient; it's a matter of law.  And it's got Supreme Court case law and it's got pending issues of law that state and actually prove that this case has no sufficient evidence for prosecution, okay.  There is a couple -- there is like three -- I have three actual cases -- |

THE COURT:     Did you discuss this with your lawyer?

THE DEFENDANT: I have attempted to discuss it with her, but she's -- I mean, there's been a conflict between me and her.  I have a problem communicating with her.  And there's been multiple -- she's attempted multiple times to actually address certain parts of the issues that I want addressed, but pertaining to -- the relevant facts have not been addressed to the original arrest.

THE COURT:     Okay.  Thank you, sir.

Counsel, did you want to address some of

| | | |
|---|---|---|
| 1 | | his concerns? |
| 2 | MS. O'CONNOR: | I did, Your Honor. |
| 3 | | I think there is a matter that the Court needs |
| 4 | | to be aware of on an ex parte basis.  I do |
| | | feel like there is someone else who is |
| 5 | | advising Mr. Richardson, and I feel that |
| | | that has interfered with the attorney-client |
| 6 | | relationship here.  I would agree with Mr. |
| | | Richardson that he and I do have a lot of |
| 7 | | disagreements and we do have difficulty |
| | | communicating with each other.  My |
| 8 | | concern is that it involves someone else |
| | | who's giving Mr. Richardson legal advice. |
| 9 | | This other attorney was an attorney in the |
| | | State of California -- I think he was |
| 10 | | disbarred about ten years ago and |
| | | practicing out of state maybe on a paralegal |
| 11 | | basis -- is giving Mr. Richardson advice |
| | | about motions to file.  I've been advising |
| 12 | | Mr. Richardson not to file any motions, not |
| | | to make any statement, and to preserve any |
| 13 | | Fifth Amendment issues.  I just want to |
| | | make sure the Court is aware of that. |
| 14 | THE COURT: | Okay. |
| 15 | MS O'CONNOR: | I do feel like it has interfered with out |
| | | relationship to a significant degree. |
| 16 | | |
| 17 | THE COURT: | Okay.  And did you want to comment on |
| | | the relationship -- he was indicating the |
| | | difficulty in communicating and so forth or |
| 18 | | was that part of you response previously? |
| 19 | MS. O'CONNOR: | In terms of our miscommunications? |
| 20 | THE COURT: | Right. |
| 21 | MS. O'CONNOR: | Well, on the legal issues, I know Mr. |
| | | Richardson is trying to kind of educate |
| 22 | | himself in the law, and I think, again, he's |
| | | getting a lot of input from someone else |
| 23 | | who's advising him.  Some of the legal |
| | | issues -- you know, I mean, he's a |
| 24 | | layperson trying to interpret the law and |
| | | articulate the law.  It's not always |
| 25 | | intelligible to me.  I disagree with a lot of |
| | | the rulings that he thinks case law currently |
| 26 | | says and for that reason I'm not bringing a |

1                  lot of the motions that he thinks are relevant.

2 

3    THE DEFENDANT: May I state something, Your Honor, on that issue?

4    THE COURT: Yes.

5    THE DEFENDANT: Okay. The fact of the matter is that I have

6 joined a law group on the Internet and I've been relentlessly researching the issues of

7 law and jurisprudence in the United States, okay, and the issues that are being brought

8 forth are not under the advisement of any other individual, okay. It's on an actual --

9 it's from my own research that I concluded these facts, okay, and case laws that I have

10 found are actually current and correct to this matter. And the fact that somebody is

11 advising me is irrelevant because they're not. I mean, I do present motions in this

12 group and they do tell me actual faults that are in them, but other than that, I'm not --

13 I'm totally researching it myself in this are of law.

14    THE COURT: Okay.

15                  Counsel, did you have anything further you wanted to say?

16 

17    MS. O'CONNOR: Just I did receive communications from this one individual who did tell me he was

18 making recommendations to my client and that he felt my client was -- he used the

19 word "disregarding" some of his advice, so I do feel like that's giving legal advice.

20    THE COURT: This person communicated with you that he felt that Mr. Richardson was disregarding

21 some of this other advisor's advice, so that would lead you to believe that he was --

22 

23    MS. O'CONNOR: Giving legal advice.

   THE COURT: -- giving legal advice.

24 

25    MS. O'CONNOR: And interfering with out relationship, obviously, to a very significant degree.

26    THE DEFENDANT: And, actually, Your Honor, that individual,

| | | |
|---|---|---|
| 1 | | I never authorized to do this, to send her |
| 2 | | anything, and I have disregarded any advice from that individual, okay. |
| 3 | THE COURT: | So you don't feel that this individual has |
| 4 | | interfered with your relationship with your attorney that's been appointed in this |
| 5 | | matter? |
| 6 | THE DEFENDANT: | No.  He's taken it upon himself to try and actually help me in this matter, but against |
| 7 | | my wishes.  I never asked him to. |
| 8 | THE COURT: | And you indicate you're not following his advice, in any event. |
| 9 | THE DEFENDANT: | Absolutely not. |
| 10 | THE COURT: | Okay.  All right.  I'm going to take a brief recess and then I'll rule. |
| 11 | | |
| 12 | THE DEFENDANT: | Your Honor, may I offer this into evidence? |
| 13 | THE COURT: | We'll take that up in my ruling.  At this |
| 14 | | point in time you're still represented by Counsel. |
| 15 | THE DEFENDANT: | Okay. |
| 16 | THE COURT: | All right.  Thank you. |
| 17 | (Short recess.) | |
| 18 | THE COURT: | All right. |
| 19 | | What's before the Court at this time, sir, |
| 20 | | you've asked the Court to discharge an attorney and its unclear to me if you |
| 21 | | wanted substitution of new counsel or precisely what you're asking for; but based |
| 22 | | on what's before the Court today, the Court finds that there is insufficient evidence to |
| 23 | | establish that there is irreconcilable conflict or that otherwise Counsel is not providing |
| 24 | | adequate representation, so your motion is denied. |
| 25 | | So, we'll round everybody up and then |
| 26 | | we'll go forward from there. |

1          Thank you very much.

2          THE DEFENDANT:  Okay.

3    Lodged Item No. 2 at 142-152.

4          "The sixth amendment's guarantee of the assistance of counsel is unusual among

5    constitutional rights in that it is also implicitly a guarantee of its opposite, the right to refuse the

6    assistance of counsel." *Adams v. Carroll*, 875 F.2d 1441, 1443 (9th Cir. 1989) (discussing

7    *Faretta v. California*, 422 U.S. 806, 819 (1975)).  Moreover, under the Sixth and Fourteenth

8    Amendments, a criminal defendant has the right to represent himself.  *Faretta*, 422 U.S. at 819.

9    To exercise the right to self-representation requires "a defendant's request . . . be unequivocal,

10   timely, and not for purposes of delay."  *Stetson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2006).

11   The requirement that the request be unequivocal serves two purposes.  First, it prevents

12   inadvertent waiver.  *Adams*, 875 F.2d at 1444 (internal citations omitted).  Second, it precludes

13   a defendant from vacillating between the choice of appointed counsel or self-representation.  *Id.*

14         In reviewing the trial court's denial of Petitioner's request, the California Court of

15   Appeal determined that nothing in the record "suggests, let alone unequivocally states,

16   defendant's desire to represent himself at that time."  *People v. Richardson*, No. C052912, 29-

17   30 (Cal. Ct. App. 2007).  This court agrees.  The colloquy between the trial court and Petitioner

18   on April 28, 2006, does not unequivocally indicate that Petitioner sought to represent himself.

19   In fact, nowhere within the April 28th proceeding does Petitioner actually state that he wants to

20   represent himself.  There is only one reference to a withdrawn *Faretta* motion and an indication

21   that Petitioner joined an online legal group and was conducting legal research.[4]  Further, in the

22   motion to vacate trial that Petitioner submitted to the state trial court,[5] there are repeated

23

24         [4]See, above, at pp. 10, 14-15.

25         [5]Petitioner submitted numerous motions to the state trial court that appear to merely copy
26   long portions of statutes and case law.  The filings are incomprehensible for the most part and
     lack any legal argument that could have provided Petitioner with a basis for relief.

1   accusations of ineffective assistance of counsel but no request by Petitioner that he be permitted

2   to represent himself.  Lodged Item No. 1 at 703-743.  Even in his § 2254(a) application,

3   Petitioner has not clearly expressed whether he sought substitute counsel or self-representation.[6]

4   Petitioner is not entitled to federal habeas relief for this claim because his request concerning

5   self-representation was equivocal.

6                                                      **C**

7          Petitioner next asserts, with regard to count one, that "[t]he court violated [his] right to

8   proof beyond a reasonable doubt and due process" when it incorrectly instructed the jury that

9   "it was not required to find the material exhibited was harmful."  App. at 6.  Here, the trial

10  court submitted written instructions to the jury on count one pursuant to the Judicial Council of

11  California Jury Instruction 1140, which provides that "[t]he People must prove that the

12  defendant knew the character of the material but do not need to prove that the defendant knew

13  whether the material met the definition of harmful material."  Lodged Item No. 1 at 911; *see*

14  *id.* at 875-926.  When orally instructing the jury, however, the trial court stated "[t]he People

15  must prove the defendant knew the character of the material but do not need to prove the

16  material met the definition of harmful material."  Lodged Item No. 2 at 575.  Thus, in the oral

17  instruction, the trial court omitted the phrase, "that the defendant knew whether."  Petitioner

18  made no objection when the trial court gave the oral instruction.  *Id.*

19         Because Petitioner did not object to the instruction at trial, this court must decide

20  whether the error in the challenged instruction, if any, amounted to "plain error" that "affects

21  substantial rights."  Fed. R. Civ. P. 51(d)(2).  The Supreme Court has explained that plain error

22  is "(1) error, (2) that is plain, and (3) affects substantial rights."  *Jones v. United States*, 527

23  U.S. 373, 389 (1999).  Affecting a substantial right "means that the error must have been

24

25       [6]       On page five of his application before this Court, Petitioner states that he was
    "denied [his] right to represent [himself] in [his] own defense," but when concluding the legal
    merits of his claim, he states that "[t]he trial court abused its discretion in failing to discharge
26  counsel and appointing a new one."  App. at 50.

1   prejudicial: It must have affected the outcome of the district court proceedings." *United States*

2   *v. Olano*, 507 U.S. 725, 734 (1993).  Moreover, "[e]ven if these conditions were met, [a court]

3   may only exercise [its] discretion to correct the error if it 'seriously affect[s] the fairness,

4   integrity or public reputation of judicial proceedings.'" *United States v. Peterson*, 538 F.3d

5   1064, 1071-72 (9th Cir. Cal. 2008) (citing *United States v. Nash*, 115 F.3d 1431, 1437 (9th Cir.

6   1997) quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

7       Plain error did not occur in this matter.  The trial court inadvertently omitted the words

8   "that the defendant knew whether" from the instruction, but this error did not prejudice

9   Petitioner or have an affect on the outcome of the proceedings because the trial court provided

10  the jury with a hard copy of the written instructions that included the words omitted in the oral

11  instructions.  Lodged Item No. 1 at 875-926.  Additionally, as the California Court of Appeal

12  noted, the arguments of counsel cleared up any confusion.  *Richardson*, No. C052912 at 20.

13  Specifically, in closing arguments on count one, the prosecutor told the jury "[T]he People

14  must prove . . . that he sent *harmful matter* by electronic means, the Internet.  That the

15  defendant knew the character of the material."  Lodged Document No. 2 at 517.  In the

16  defense's closing argument, Petitioner's attorney told the jury, "In regards to Count One, these

17  are the elements that have to be proven . . . . You must also decide whether or not the material

18  at issue in this case meets the definition of harmful material."  *Id.* at 540..

19      These factors, coupled with the Petitioner's failure to object to the trial judge's oral

20  instructions, lead this court to conclude that "there is no reason to suppose that any juror was

21  confused by the judge's slip of the tongue, and probably they understood him to say orally

22  what he meant to say and did say in the written instructions."  *United States v. Ancheta*, 38

23  F.3d 1114, 1117 (9th Cir. 1994).  The state trial court's misstatement did not affect the

24  outcome of the proceedings and, thus, the error did not affect Petitioner's substantial rights.

25  Accordingly,  Petitioner is not entitled to federal habeas relief.

26  /////

**D**

Petitioner's fourth claim stems from the trial court's refusal to discharge his court appointed counsel.  Petitioner argues that "[t]he trial court denied [his] right to counsel when it refused to grant [his] request to relieve counsel on April 28, 2006 where it was apparent that counsel and [he] had become embroiled in an irreconcilable conflict."  App. at 6.

Petitioner recognizes that "[t]actical disagreements which 'do not by themselves constitute an irreconcilable conflict.'"  App. at 48 (citing *People v. Cole*, 33 Cal. 4th 1158, 1192 (2004)).  He then concedes that "it is evident from [Petitioner's] words that much of his dissatisfaction with counsel was based on her failure to pursue certain issues on his behalf, i.e. tactical disagreements."  *Id.*  Petitioner tries to reconcile this contradiction by now asserting that the disagreement was "more than [a] mere tactical disagreement[]."  *Id.*  But this assertion is belied by Petitioner's conclusion that "the irreconcilable conflict . . . . was motivated because counsel was not proceeding in what he perceived to be an appropriate manner."  *Id.*  Therefore, the disagreements between Petitioner and his counsel were simply tactical and did not constitute irreconcilable conflict.  Thus, Petitioner is not entitled to federal habeas relief for this claim.

**E**

In his fifth claim, Petitioner contends that the state interfered with interstate communications.  App. at 8.  He argues that "[t]he police interfered with [his] Interstate communications between the Internet screen name Invader_Tabbz and Supersmartguy2004 which took place across the State lines of California and Nevada."  *Id.*

This claim, however, does not raise a cognizable violation of federal law.  A writ of habeas corpus is available under 28 U.S.C. § 2254(a) "only on the basis of some transgression of federal law binding on the state courts."  *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).  Petitioner has not identified any interstate communication laws that were violated by the police.  Petitioner's entire claim is as follows: "Ground Five: State interference with Interstate communications.  Supporting Facts:

The police interfered with my Interstate communications between the Internet screen name Invader_Tabbz and Supersmartguy2004 which took place across the state lines of California and Nevada." App. at 8.  Consequently, Petitioner is not entitled to federal habeas relief for this claim.

**F**

In his sixth claim, Petitioner asserts that his "[c]onviction [was] obtained by violation of the protection against double jeopardy." App. at 8.  He argues that he "was convicted of the separate CA Penal Code Sections 288.2(b) and  647.6(a) for the single act involving an Internet conversation between Ascension_into_lies and [himself]." App. at 8.

When analyzing a double jeopardy claim, "[t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  "[T]he Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *Iannelli v. United States*, 420 U.S. 770, 786 n.17 (1975).

The Judicial Council of California Criminal Jury Instructions for California Penal Code § 288.2(b) read as follows:

> To prove that the defendant is guilty of this crime, the People must prove that:
> 1.    The defendant showed, sent, caused to be sent, or distributed, harmful material to a minor by the Internet;
> 2.    When the defendant acted, he knew the character of the material;
> 3.    When the defendant acted, he knew the other person was a minor;
> 4.    When the defendant acted, he intended to sexually arouse, appeal to, or gratify the lust, passions, or sexual desires of himself or of the minor; and
> 5.    When the defendant acted, he intended to seduce the minor.

Judicial Council of California Criminal Jury Instruction 1140 (2008).

The Judicial Council of California Criminal Jury Instructions for California Penal Code §

647.6(a) state:

> To prove that the defendant is guilty of this crime, the People must prove that:
> 1.    The defendant engaged in conduct directed at a child;
> 2.    A normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct;
> 3.    The defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child; and
> 4.    The child was under the age of 18 years at the time of the conduct.

Judicial Council of California Criminal Jury Instruction 1122 (2008).

Section 288.2(b) requires proof of a fact which § 647.6(a) does not.  Namely, § 288.2(b) requires proof of the fact that the defendant showed, sent, caused to be sent, or distributed, harmful material to a minor by the Internet.  Section 288.2(b) also requires proof of the fact that when the defendant acted, he intended to sexually arouse, appeal to, or gratify the lust, passions, or sexual desires of himself or of the minor and intended to seduce the minor.  Section 647.6(a) does not require proof of these facts.

Section 647.6(a) also requires proof of a fact which § 288.2(b) does not.  Namely, the prosecutor must prove that a normal person, without hesitation, would have been disturbed, irritated, offended, or injured by the defendant's conduct, and the defendant's conduct was motivated by an unnatural or abnormal sexual interest in the child.  Section 288.2(b) does not require proof of these facts.

Petitioner's conviction does not violate double jeopardy because § 288.2(b) and § 647.6(a) require proof of different elements.  Hence, Petitioner is not entitled to federal habeas relief for this claim.

## G

In his seventh, eighth, fourteenth, fifteenth and eighteenth claims, Petitioner maintains that his conviction was not supported by sufficient evidence.  Although Petitioner mentions no specific federal constitutional claim, the Court accepts the Respondent's interpretation that

these claims represent federal due process claims.  Answer at 30.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Chein v. Shumsky*, 373 F.3d 978, 982-83 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318).  A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005).  In a state prisoner's application for a writ of habeas corpus, a federal court must find that the decision of the state court reflected an objectively unreasonable application of *Jackson* and *Winship* to the fact of the case.  *Id.* at 1275.

When the sufficiency of the evidence is challenged by a state prisoner in federal habeas corpus proceedings, a federal court must review the entire record. *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  If the trier of fact could draw conflicting inferences from the evidence, a reviewing court will assign the inference that favors conviction. *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994).  "The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Dinkane*, 17 F.3d 1192, 1196 (9th Cir. 1994) (quoting *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991)).  A federal court must determine the sufficiency of

the evidence in reference to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 234, n.16.   The sufficiency of evidence claims are addressed below.

**1**

Petitioner makes substantially similar claims in both grounds seven and eight.  In ground seven, Petitioner claims that the "[e]vidence was insufficient as a matter of law to establish [his] guilt of a violation of [California Penal Code] sections 664/288(a)"—attempting to commit a lewd act with a child under 14.   App. at 8.  In ground eight, Petitioner claims that there was "[i]nsufficient evidence to prove [his] guilt beyond a reasonable doubt of a violation of [California Penal Code] sections 664/288(a) or section 647.6(a)."  *Id.*

A person is guilty of a violation of California Penal Code § 288(a) if he or she

> willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years.

Cal. Penal Code § 288(a).  An attempt to commit a violation of California Penal Code § 288(a) requires proof of two elements: "(1) a specific intent to commit the crime, and (2) a direct but ineffectual act done toward its commission."  *People v. Toledo*, 26 Cal. 4th 221, 230 (2001). This court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. 319 (emphasis in original).

Petitioner contends that his acts were ambiguous and were "mere preparation."  App. at 35.  Petitioner claims:

> After engaging in sexually suggestive conversation with invader_tabbz on the internet, the evidence shows that supersmartguy2004 arranged through instant messaging to meet Jane Doe, also known as "Kathy," at a 7-Eleven in Roseville at 12:30 a.m.  At 12:20 or 12:22, appellant quickly pulled his car into the 7 Eleven parking lot.  He went inside the store and purchased condoms and liquor.  He then left the 7-Eleven parking lot in his car at 12:22, eight minutes before the scheduled rendezvous.  He

1          was thus not at the designated meeting place at the arranged time.
2          This is insufficient evidence of a direct but ineffectual act toward
        the commission of the crime.  It is not an immediate stop toward
3          the present execution of the criminal design.

4   App. at 35-36 (citations omitted).

5       The California Supreme Court has explained the difference between preparation and

6   attempt as follows:

7          The preparation consists of devising or arranging the means or
        measures necessary for the commission of the offense, while the
8          attempt is the direct movement toward its commission after the
        preparations are made. In other words, to constitute an attempt the
9          acts of the defendant must go so far that they would result in the
        accomplishment of the crime unless frustrated by extraneous
10         circumstances.

11  *People v. Memro*, 38 Cal. 3d 658, 698 (Cal. 1985).  Further, "an attempt, as distinguished from

12  acts preparatory to that offense, requires 'some appreciable fragment of the crime . . .

13  accomplished.'" *Id.*

14      In this case, Petitioner looked at Jane Doe's Yahoo! profile that showed that her screen

15  name, "invader_tabbz," belonged to a 13-year-old girl living in Roseville.  After suggesting

16  they make out, and acknowledging that "invader_tabbz" was 13, Petitioner arranged to meet her

17  at a nearby 7-Eleven at 12:30 a.m.  Lodged Item No. 1 at 127-129.  Following this preparation

18  for meeting Jane Doe, Petitioner then got dressed in what he told invader_tabbz he would be

19  wearing, got into the same car he described to invader_tabbz, and drove to the nearby 7-Eleven

20  at approximately 12:20 a.m. where he purchased an alcoholic beverage and condoms.  *Id.* at

21  185.  Petitioner does not contest the state court's determination that "the only reasonable

22  inference to explain [his] sudden flight" was the spotting of a police officer outside of his car.

23  Absent evidence that would prove this inference unreasonable, Petitioner's actions to flee from

24  the store do not negate the series of overt acts he had just completed with the intent to commit a

25  violation of California Penal Code § 288(a).  The evidence was therefore sufficient to support

26  Petitioner's conviction on Count two.

**2**

In ground fourteen, Petitioner claims that there was "[i]nsufficient evidence to prove [his] guilt beyond a reasonable doubt of a violation of [California Penal Code] sections 664/288(a) or section 647.6(a)." App. at 11.  Petitioner asserts that he did not know the victims' ages because he "relied on the Yahoo! Internet service provider and their contractual terms of service agreement" which requires that the user be of legal age.  *Id.* "Sufficiency-of-the evidence review involves assessment by the courts of whether the evidence adduced at trial could support any rational determination of guilt beyond a reasonable doubt." *United States v. Powell*, 469 U.S. 57, 67 (1984).  California Penal Code § 288(a) applies to children under 14 years of age and California Penal Code § 647.6(a) applies to children under 18 years of age.

The record contains adequate evidence from which a rational trier of fact could infer that Petitioner knew the victims' ages.  First, "Jane [Doe]'s Yahoo! profile showed that her screen name, 'invader tabbz,' belonged to a 13-year-old girl living in Roseville." *Richardson*, 151 Cal. App. 4th at 793.  Petitioner told Jane Doe that he found her using Yahoo!'s member directory. *Id.*  Second, while Petitioner and Jane Doe were communicating, she said "I'm only 13 does that matter?"  Lodged Item No. 1 at 127.  Petitioner responded "omg right qnd [*sic*] not really if youve [*sic*] made out before then nope." *Id.*  Similarly, Mary Roe's Yahoo! profile identified her as a 13-year-old girl living in Sacramento. *Richardson*, 151 Cal. App. 4th at 795.  Mary told Petitioner that she was "not even old enough to get a work permit." *Id.* at 796.  Evidence also existed that Petitioner contacted other girls with Yahoo! profiles indicating they were under the age of 18. *Id.* at 797-98.

Viewed in the light most favorable to the prosecution, a rational trier of fact could have found that Petitioner knew the girls he spoke to on the Internet were under the age of 14. Accordingly, sufficient evidence existed to convict Petitioner of California Penal Code §§ 664/288(a) and 647.6(a).

**3**

In ground fifteen, Petitioner claims that there was "[i]nsufficient evidence to prove [his] guilt beyond a reasonable doubt of a violation of [California Penal Code] sections 664/288(a) or section 647.6(a)."  App. at 12.  Again, Petitioner asserts that he "was tried and convicted on a should of known the age of [his] recipients over the Internet principle when [he] did not know for a fact nor did [he] believe that [he] was corrosponding [*sic*] with underage females."  *Id.* This assertion is not supported by the evidence presented at trial.

As explained above, both Jane Doe and Mary Roe's profiles indicated they were thirteen- year-old girls.  Further, during the conversations Petitioner had with "invader_tabbz" and "ascension_into_lies", the girls indicated their young age—"invader_tabbz" said she was thirteen and "ascension_into_lies" said she was too young to get a work permit.  Additionally, Petitioner viewed both Jane Doe's and Mary Roe's online profiles that indicated they were thirteen years old.  Thus, there was sufficient evidence for the jury to conclude the Petitioner knew that the victims were minors.

**4**

In ground eighteen, Petitioner claims that there was "insufficient evidence to prove [his] guilt beyond a reasonable doubt of a violation of" California Penal Code § 647.6(a).  *Id.* at 13. In support of his claim, Petitioner contends that he "was never in the physical presence of any alleged juvenile victims therefore there was no overt act that violated" California Penal Code § 647.6(a).  *Id.*

California Penal Code § 647.6(a) does not contain a "physical presence" requirement.

> [T]he primary distinction between section 288, subdivision (a), and section 647.6 is that the former requires that a touching or constructive touching occur, and that the touching is lewd. It is this type of overt contact, or intrusion upon the body of the child done with lewd intent, that distinguishes a section 288, subdivision (a), offense from the less serious offense defined by section 647.6.

*People v. Memro*, 11 Cal. 4th 786, 871 (Cal. 1995); *see also* Judicial Council of California

1   Criminal Jury Instruction 1122 (2008) (physical presence is not an element of California Penal

2   Code § 647.6(a)).  As discussed in Section J, below, the Petitioner need only annoy or molest a

3   child to violate the section, which the Petitioner accomplished through his online conversations

4   with the victims.  Accordingly, there was sufficient evidence for the jury to conclude the

5   Petitioner annoyed or molested the victims through his instant messages.

6                     **H**

7       Petitioner alleges six discrete claims[7] contending that the evidence used against him

8   violated his Fourth Amendment rights because it was obtained without probable cause pursuant

9   to an unlawful arrest.  Under *Stone v. Powell*, 428 U.S. 465 (1976), Petitioner's claim that

10   evidence introduced at trial was seized in violation of the Fourth Amendment cannot be made

11   pursuant to § 2254(a).  In *Stone*, the Supreme Court held that  "where the State has provided an

12   opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not

13   require that a state prisoner be granted federal habeas corpus relief on the ground that evidence

14   obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 482.  The

15   Supreme Court instructed that state prisoners were not entitled to federal habeas relief on

16   Fourth Amendment grounds if they were able to litigate fully their Fourth Amendment claims in

17   state court. *Id.*

18       The record shows that Petitioner was provided with the opportunity to litigate fully his

19   Fourth Amendment claims.  A defendant may move to suppress illegally obtained evidence in

20   the trial court pursuant to California Penal Code § 1538.5(a) which provides:

21        (1)    A defendant may move . . . to suppress as evidence any
                 tangible or intangible thing obtained as a result of a search
22                or seizure on either of the following grounds:
          (A)    The search or seizure without a warrant was
23                unreasonable.
          (B)    The search or seizure with a warrant was unreasonable
24                because any of the following apply:
            (i)    The warrant is insufficient on its face.

25

26     [7]     Specifically, grounds eight, nine, ten, eleven, twelve, and thirteen.  App. at 8-11.

(ii)  The property or evidence obtained is not that
described in the warrant.
(iii)  There was not probable cause for the issuance of the
warrant.
(iv)  The method of execution of the warrant violated
federal or state constitutional standards.
(v)  There was any other violation of federal or state
constitutional standards.

The trial court denied Petitioner's motion to suppress the search warrant after a hearing

conducted pursuant to § 1538.5.  *See* Lodged Item No. 2 at 5-20.  The trial court held that "the

search warrant was very clear and specifically allowed the officer to search for a variety of

things."  Because Petitioner was provided a full and fair opportunity to litigate his Fourth

Amendment claims, these claims are barred from federal habeas review under *Stone v. Powell*,

428 U.S. at 481-82.

# I

Petitioner's sixteenth claim asserts that Cal. Penal Code § 288.2(b) is unconstitutional.

Petitioner's entire claim is as follows:

Conviction obtained by use of an unconstitutional CA penal code.
Supporting Facts: The juxtaposition of CA Penal Code sections
288.2(b)[8] and section 288.2(c)[9] coupled with the legislative history

---

[8]California Penal Code § 288.2(b) provides:

Every person who, with knowledge that a person is a minor,
knowingly distributes, sends, causes to be sent, exhibits, or offers
to distribute or exhibit by electronic mail, the Internet, as defined
in Section 17538 of the Business and Professions Code, or a
commercial online service, any harmful matter, as defined in
Section 313, to a minor with the intent of arousing, appealing to, or
gratifying the lust or passions or sexual desires of that person or of
a minor, and with the intent, or for the purpose of seducing a
minor, is guilty of a public offense and shall be punished by
imprisonment in the state prison or in a county jail.

A person convicted of a second and any subsequent conviction for
a violation of this section is guilty of a felony.

[9]California Penal Code § 288.2(c) provides: "It shall be a defense to any prosecution
under this section that a parent or guardian committed the act charged in aid of legitimate sex
education."

of these sections is proof that CA penal code section 288.2.(a)[10] is inapplicable to Internet communications leaving CA penal code section 288.2.(b) as an unconstitutional CA penal code.

App. at 12.  The court agrees with Respondent that Petitioner's claim is vague and conclusory. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (replying on *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir.1970)); *see also Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 ("vague and conclusory allegations" fail to make sufficient showing to justify habeas relief). Petitioner fails to explain what section of the Constitution would render § 288.2.(b) unconstitutional.  This court is unable to discern any constitutional basis for granting habeas relief for this claim.  "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since *the challenger must establish that no set of circumstances exists under which the Act would be valid*.  The fact that the [Act] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment."  *United States v. Salerno,* 481 U.S. 739, 745 (1987).  Thus, Petitioner's conclusory and illogical claim is not entitled to relief.

/////

---

[10]California Penal Code § 288.2(a) provides:

> Every person who, with knowledge that a person is a minor, or who fails to exercise reasonable care in ascertaining the true age of a minor, knowingly distributes, sends, causes to be sent, exhibits, or offers to distribute or exhibit by any means, including, but not limited to, live or recorded telephone messages, any harmful matter, as defined in Section 313, to a minor with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or of a minor, and with the intent or for the purpose of seducing a minor, is guilty of a public offense and shall be punished by imprisonment in the state prison or in a county jail.

> A person convicted of a second and any subsequent conviction for a violation of this section is guilty of a felony.

**J**

Petitioner's further argues that:

> [i]t is ubsurd [*sic*] and unconstitutional to convict a person of a sex crime against a minor for a simple act of annoyance of a minor. [California Penal Code] section 647.6(a) is unconstitutional on its face as it creates the above mentioned circumstance making that section overbroad.

App. at 13.

"According to [the] First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech." *United States v. Williams*, 128 S. Ct. 1830, 1838 (2008) (discussing *Virginia v. Hicks*, 539 U.S. 113, 119-120 (2003)).  Petitioner "bears the burden of demonstrating, 'from the text of [the law] and from actual fact,' that substantial overbreadth exists." *Virginia*, 539 U.S. at 122 (citing *N.Y. State Club Assn. v. City of New York*, 487 U.S. 1, 14 (1988)).

California Penal Code § 647.6(a) provides, in part, as follows:

> (a) (1) Every person who annoys or molests any child under 18 years of age shall be punished by a fine not exceeding five thousand dollars ($5,000), by imprisonment in a county jail not exceeding one year, or by both the fine and imprisonment.
>
> (2) Every person who, motivated by an unnatural or abnormal sexual interest in children, engages in conduct with an adult whom he or she believes to be a child under 18 years of age, which conduct, if directed toward a child under 18 years of age, would be a violation of this section, shall be punished by a fine not exceeding five thousand dollars ($5,000), by imprisonment in a county jail for up to one year, or by both that fine and imprisonment.

Petitioner's contention that § 647.6(a) simply criminalizes the "act of annoyance of a minor" is not supported by California case law.

The California Supreme Court has held that to establish a violation of California Penal Code § 647.6(a), the prosecution must prove (1) the defendant engaged in conduct directed at a child; (2) a normal person unhesitatingly would have been irritated, disturbed, offended or

injured by the conduct; and (3) defendant's conduct was motivated by an unnatural or abnormal

sexual interest in the child victim.  *People v. Lopez*, 19 Cal. 4th 282, 289 (Cal. 1998).  The trial

court properly instructed the jury that it must find that his abnormal conduct must be proved.

The trial court's instruction to the jury was as follows:

> To prove the defendant is guilty of this crime, the People must
> prove:
> 1.   The defendant engaged in conduct directed at a child.
> 2.   A normal person without hesitation would have been
>      disturbed, irritated, offended, or injured by the defendant's
>      conduct.
> 3.   The defendant's conduct was motivated by an unnatural or
>      abnormal sexual interest in the child, and
> 4.   The child was under the age of 18 years at the time of the
>      conduct.

Lodged Item No. 2 at 578.  Accordingly, Petitioner was not simply convicted for annoying his

victim.  Petitioner has failed to demonstrate § 647.6(a) is overbroad.

### K

Petitioner next claims that the failure to provide a unanimity instruction violated his

right to due process.  Petitioner asserts:

> [T]he trial court committed prejudicial error and violated [his]
> rights to due process and to a unanimous verdict by jury trial under
> Article 1, Section 16 of the California Constitution and the Sixth
> and Fourteenth [*sic*] amendments to the United States
> Constitution when it failed to instruct the jury as to count one that
> it must unanimously agree on which act [Petitioner] committed in
> order to find him guilty of sending harmful material to a minor
> under Penal Code Section 288.2, Subdivision (b).

App. at 28.  Petitioner contends that the jury could have found him guilty of California Penal

Code § 288.2 based on his numerous instant message conversations.  App. at 28-29.  Petitioner

argues that because the jury could have looked at different conversations to find him guilty, the

jury should have been instructed that it must unanimously agree on what acts were committed

to find him guilty of this statute.  *Id.*

In California, "[a] unanimity instruction is required only if the jurors could otherwise

1  disagree which act a defendant committed and yet convict him of the crime charged." *People v.*

2  *Beardslee*, 279 Cal. Rptr. 276, 288 (Cal. 1991). Thus, "the unanimity instruction is appropriate

3  'when conviction on a single count could be based on two or more discrete criminal events.'"

4  *People v. Russo*, 108 Cal. Rptr. 2d 436, 444 (Cal. 2001) (citations omitted). But California

5  recognizes an "either/or rule" when determining the necessity of a unanimity instruction.

6  *People v. Jones*, 270 Cal. Rptr. 611, 624 (Cal. 1990). This rule states that "[e]ither the

7  prosecutor must select the acts relied on to prove the charges, or the jury must be given an

8  instruction that it must unanimously agree beyond a reasonable doubt that the defendant

9  committed the same specific criminal act." *Id.* "[A] conviction will be upheld if the

10  prosecution elected which act it would rely upon for each allegation." *People v. Burnett*, 83

11  Cal. Rptr. 2d 629, 643 (1999).

12      The California Court of Appeal held that the trial court did not err in failing to give a

13  unanimity instruction because "the prosecutor elected the acts at issue." *Richardson*,

14  No. C052912 at 22. The Court of Appeal based its conclusion on three explicit statements

15  made by the prosecution at trial:

> At the state of her closing argument, the prosecutor asked
> rhetorically: 'What happened on April 8th and April 9th of 2004?'
> Later, she said as to Count 1: '[T]his count is directed specifically
> at the 'ascension_into_lies' conversation on April 8th of 2004.' In
> rebuttal, she added that the relevant time period for all the charged
> offenses began at '3:32 in the afternoon on April 8th' – when
> defendant's conversation with Mary Roe began – then specified
> that defendant 'had an almost six-hour conversation . . . with
> 'ascension_into_lies'' which 'goes to our harmful matter[.]

*Id.* When the prosecution gave the elements for count one, the prosecutor explicitly stated "this

count is directed specifically at the 'assention_into_lies' conversation on April 8th of 2004."

This sufficiently explains which act the jury was considering relating to the conviction on count

one. Thus, Petitioner was not prejudiced by the trial court's failure to give a unanimity

instruction. He is not entitled to relief on this claim.

**L**

Finally, Petitioner argues that the record shows that the California Department of Corrections and Rehabilitation has subjected him to cruel and unusual punishment by not providing him with adequate mental and medical health care.  App. at 13.

This claim cannot be raised in a federal habeas corpus application because the claim does not challenge the legality of Petitioner's imprisonment.  In *Crawford v. Bell*, 599 F.2d 890 (9th Cir. 1979), the Ninth Circuit held that the terms and conditions of incarceration as cruel and unusual punishment cannot be raised pursuant to § 2254(a).  *Id.* at 891.  "[T]he writ of habeas corpus is limited to attacks upon the legality or duration of confinement."  *Id.*  Such claims are properly asserted under 42 U.S.C. § 1983.

**IV**

For the reasons expressed herein, it is ORDERED that Petitioner's application for a writ of habeas corpus is  DENIED.  The clerk is directed to enter judgment and close the case.

DATED: November 17, 2008

/s/ Arthur L. Alarcón
UNITED STATES CIRCUIT  JUDGE
Sitting by Designation